Welcome to the United States Court of Appeals for the Fourth Circuit. We've got three cases on for hearing this morning, and I want to acknowledge and publicly thank our good friend and colleague, Louise Flanagan, from the Eastern District of North Carolina, who has taken time away from her other day job to be with us this morning, and we're grateful for that. Our first case this morning is 22-4658, United States v. Nelson. Ms. Thoma. Good morning, Your Honors, and may it please the Court. Jenny Thoma for Alante Nelson. We've made two arguments why his drug predicates are overbroad, and I'd like to start with his B1c overbreath argument to address the primary dispute. We have two with respect to that that I believe are an issue, timing and divisibility. So I'll begin with timing in United States v. Brown or Brown v. United States, which came out post-briefing. There are at least three reasons why Brown does not extend to the guidelines and doesn't control the outcome here. First, the Supreme Court's reliance on ACCA-specific cases to reach its result. So McNeil, which it relied on, is also an ACCA case, and it doesn't extend to the guidelines, as the Supreme Court recognized at note seven of the opinion that the ordinary guideline practice requires the opposite. Congress directed courts to apply the guidelines, sentencing, and handments as they exist at the time of federal sentencing. And so those are different analyses. Second, it's consistent with the animating principles of the Sentencing Reform Act, as the Supreme Court also reviewed in Dorsey as well. The background sentencing principle, absent an ex post facto violation, of course, is that the Court shall use the guidelines manual in effect on the date the offense was commenced under 1B1.11a, and that the guidelines are meant to reflect as much as possible advancements in knowledge as it relates to the criminal justice process, and that's in 991B1, and account for the evolving community view of the gravity of the offense, the public concern generated by the offense, that's 994C4N5, and when advancements in knowledge lead a drug to be disscheduled, unlike ACCA, which is very inflexible and backward-looking, the guidelines are flexible and forward-looking, and they're meant to account for the current reality at the time of federal sentencing. Notably, in 2016, the Sentencing Commission published a report finding specifically that drug-only offenders, like Mr. Nelson, who only has drug trafficking predicates, should not properly be subject to career offender sentencing enhancements. And so that's another example of how the guidelines are very current-focused, very forward-looking, and unlike ACCA in that respect. Brown's ACCA statutory objectives rationale also does not extend to the guidelines for the same reasons. Those are different purposes, and as the First Circuit probably best said in Abdulaziz, which we cite in the briefs, it's the difference between a when culpability attaches. So for ACCA, there's a judgment made by Congress that culpability attaches at the time of the prior commission, reflecting a judgment that the possession of a firearm with those priors would result in increased harm and should result in increased punishment. But the guidelines... With respect to this issue of culpability, is it culpability for a particular drug, or is it simply culpability for a controlled substance? If I understand the question correctly... Well, yeah, so, I mean, it's a clever argument that you've got a controlled substance that is no longer on the schedule, but the gravamen of the offense is, is it possession of controlled substance just generically? So we've got the same offense, it's a controlled substance violation. Why do we care about whether or not, whether it was cocaine or any other item on the controlled substance list? That's our second argument, is that B1C is simply indivisible when it comes to I agree that it seems a little bit unlikely or strange, but it is an operation of the categorical approach, which regularly produces, as we all know, odd results. But what I'm suggesting to you is that the offense is more broadly defined as a violation of possession of a controlled substance period, and it still remains, it was an offense before, it remains an offense now. Right, well, in order to actually prove a violation of B1C, which was what Mr. Nelson's doing, he has to prove that he possessed a controlled substance in Schedule I or Schedule II, and it doesn't have to prove which one. And, in fact, the government does sometimes do testing, but in terms of the categorical approach, we are simply looking at the elements, and we are looking at the least culpable thing in it, and that happens to be things that have been descheduled since. So in this case, you know, hemp, iofoclain is another, and that's again simply by operation of the categorical approach. There has to be some proof of a Schedule I or II controlled substance. It's not just possession, if I'm hopefully getting to the point of your question. It's not just possession. It's not just distribution. There has to be proof of Schedule I or II controlled substance for a B1C offense. In other words, if the government had not proven Schedule I or II controlled substance, there could be no penalty applied from B1C. I understand that argument, but I guess my point is that except for the deletion of this one drug from the controlled substance list, the offense writ large remains the same. There's nothing different about it. And maybe your point is that that really matters. I think that's correct. You're correct, and I agree with you. His offense remains the same, but the operation of the categorical approach renders that irrelevant as a matter of law. So I only wanted to follow up with the divisibility of B1C. The Supreme Court said as much for crack, cocaine, and tarry, and that resolves that argument in our favor. I don't think that there's any real concern about dicta, given the extensiveness with which that question was litigated and So if the court has any further questions about the first argument, I'm happy to answer those, and if not, I could move on to our second. Let me go back to this issue of divisible by substance. It's not, I don't know how often this happens, but it seems odd that every time, if Congress were to decide for whatever reason here, it was a perfectly legitimate reason that a drug that had otherwise been listed as a controlled substance has some medicinal purposes, and therefore that's why it was removed. And do you think that Congress really intended this result, that simply by removing a now legitimate drug from the list of controlled substances, that that somehow reduces culpability for someone who obviously didn't possess that medicinal drug? I think they probably don't, but I also would say that they probably didn't intend most of what has come out of the categorical approach as well. That's probably quite fair. That's the answer? I guess that's a good enough answer. It's the one I have. What do you got? But I also would note that the guidelines are drafted by the Sentencing Commission in any case, and of course they are approved by Congress, but it is a different entity who is doing the drafting. So there is at least that division. But moving on, I suppose, to our Virginia overbreadth by conduct argument, I think that in the case of Virginia, this presents a unique statutory scheme that is unlike any of the other schemes that this Court has addressed to date, as much as it provides different statutory penalties for an attempted distribution as it does for an attempted transfer via possession of firearm by a felon. And the argument there, or the issue there, was that the government, you know, had chosen one to prosecute, and he had said there is absolutely nothing wrong with conduct being criminalized by two statutes, even if it provides for different penalties. And so we think that that's very, very strong evidence that there are no surplusage concerns when this happens. When you have a drug statute that in one section criminalizes attempted transfer, and in another criminalizes attempted distribution, in particular when there is a different statutory penalty that attaches to it, there is no reason to interpret those as having absolutely no overlap in conduct. That's not a surplusage concern. And the Supreme Court has been pretty clear about that. In statutes, they have said that a job is a job. And as long as a word or phrase does some job, even if it's not very heavy lifting in a statute, that's no reason to have redundancy concerns about the fact that there might be some overlap or redundancy there. Well, how would you reconcile our three recent decisions in Groves, Miller, and Davis? I didn't see, I know for the Groves and the federal decisions that a federal attempted distribution and a federal attempted transfer carry exactly the same statutory penalty. And I saw nothing in Miller or Davis to suggest that different penalties were at issue for North Carolina or South Carolina. So I think that that's a very clear distinguishing, especially when you apply Batchelder and Mitchell to that situation. What is it about the different penalties that makes it distinguish, that makes a difference here? We have a Supreme Court president that simply says that that's not a problem. I don't know that the Supreme Court has had occasion, or at least not that I found, to address statutes that have the precise same penalties. It is a distinguishing factor. But distinguishing in a way that matters, and if so, why? I think so just because, you know, like I said, I can point to the Supreme Court saying that this situation does not create surpluses. This is not a situation where we have, you know, one statute that overlaps impermissibly with the other. This is a situation where all it does is provide the government with more options on how to prosecute a crime. So I think that that's the best I can point to, is that the Supreme Court has said that there is authority for that. Do you think it's different here? Do I think that the punishment is different from the crime with respect to Virginia's statutory scheme for drug offenses? I think that it, much like B1C, requires the prosecutor to prove a certain set of facts. So it does require them to prove certain things. As far as I'm aware, I have not been able to locate any real difference between a Virginia attempted distribution and an attempted transfer, because even if one was ordinarily meant, it still, I don't know how it would possibly, it could possibly, I suppose, fall outside the realm of attempts versus, attempts as they are statutorily defined, as with an attempted substantial step, but I think that attempt as it's ordinarily meant would often fall into that. It would, arguably. So, I mean, I think that the government has to prove the same thing for both, and then they have a choice. Do they want to pursue a 1 to 10 or a 5 to 40? And I know with, at least with respect to the federal system, at least, there, you know, those, those attempted transfer positions, they get used. They're not, they're not in disuse. Those are used to uphold sentences. So, let's see, if the court has no further questions about that, I would just say in conclusion that those attempted transfer and attempted distribution both have jobs to do in Virginia's statutory scheme, and so there are no surplusage concerns to interpret them that way. That leaves the congressional directive in 994, which doesn't apply to state offenses. By its own terms, it applies to offenses that are in the Controlled Substance Act, the Federal Controlled Substance Act, Section 401. And in any case, as Dorsey makes clear, that directive doesn't bind Congress, which is who actually approves these, the Commission's promulgated regulations. So, if the court has further questions, I'm, again, happy to answer those. If not, I'll reserve the remainder of my time for rebuttal. Thank you, counsel. Thank you. Ms. Hurney. Good morning. May it please the Court that I have the honor of presenting to you the Court Eleanor Hurney for the United States. I would like to begin by addressing the overbreadth by drug type argument. So, how I'm going to address this is under the first overbreadth argument before moving to the second overbreadth argument. I'd like to first note, as it looks to the two different convictions in question, this court and ward has already decided that the Virginia statute is divisible by drug type. And so, here, we're looking at 841B1C. And, more specifically, we're looking at the statute in its entirety. And the critical question is whether or not 841 is divisible. And if so, then we can look at the judicially noticeable documents to resolve the issue. That Mr. Nelson was convicted of distribution of cocaine base, which was illegal now. And the answer to this critical question is that Section 841, and specifically B1C, is divisible for at least three reasons. First, the statutory text tells us that it is. Second, this court's prior decisions interpreting similarly structured statutes tell us it is. And third, external documents like charging instruments and jury instructions also tell us that it is. So, starting with the statutory text, I would dispute the proposition that B1C simply covers, as an element, any unspecified quantity. Can I stop you for a second and go back to the fundamental question of whether or not we even get to the modified categorical approach? Do you disagree with the premise that if a jury were to convict possession of a controlled substance and six of the jurors thought that the controlled substance was cocaine and six thought it was something else, is there anything wrong with that conviction? I think it would depend on the jury instructions. If it's solely under 841 B1C and they're instructed as to what schedule. But if we're looking simply at 841 B1C, it's not simply controlled substances one or two. There are further clauses in that subsection that aren't specifically. Don't we have cases that suggest that it really doesn't matter? Point me to a case that says that the identity of the controlled substance would matter in that kind of a case. In that specific kind of a case, I would not dispute that premise. So how do we even get to the modified categorical approach then if it doesn't matter what the substance is for conviction purposes? Your Honor, I think that we have to look at the statute in its entirety and instead of focusing on that portion of B1C that says schedule one or two controlled substances, we look at it in its entirety and look at how D operates to limit C. It is more complicated than some of the generic state statutes that simply say possession of controlled substances shall be illegal under the law. We have a more complicated statutory structure where Section A1 sets forth the elements, the conduct of the offense, and B1, all of them, by operation of Apprendi and Allain, obviously set out elements that must be proven because they impact statutory maximums, statutory minimums. But even within B1C, it's not simply any schedule one or two controlled substance, not otherwise specified. So for example, certain amounts of Flunitrazepam, which is a date rape drug and is a schedule four controlled substance, are also included in that subsection. So if you were to see 841B1C, it doesn't necessarily automatically equal schedule one or schedule two controlled substance. Okay. So you're extracting a controlled substance from outside of the first two schedules to then argue that that makes it a modified categorical approach analysis? I wouldn't say extracting it from out of the first two schedules, but looking at the entirety of 841B1C in its context. Which is limited to what in terms of the schedules? It covers a variety of schedules. Obviously the schedules one and two are not otherwise specified. So as discussed in Terry, in a different context, crack cocaine is covered by that section if it's not in the amounts otherwise specified in B1 or if it is in the amounts otherwise specified in B1, but the prosecutor opts not to charge it that way. Maybe I misunderstood your argument, but I thought you were suggesting that because a conviction could be had for an appropriate to consider as a modified categorical analysis. Is that what you're saying or is it something else? In a sense, Your Honor, and it may be an argument that's simply unavailing with the court and that I should move on from. Well, no, I'm just trying to figure this out because, you know, it's really odd. I mean, the result is, I think, absurd that we would not count what is clearly a conviction under any sense of the imagination. But I'm just having trouble wrapping my arms around the, well, let me ask you this. If we don't agree with you that this is an offense that we can, that is divisible and we could apply the modified categorical approach, do you lose? Your Honor, I believe at that point we would have to turn to the timing issue or the court would have to determine that Section 994, similar to the argument that was made in Groves, simply counsels a different result. And that, as I believe was identified in the Groves opinion, it would be an absurd result to assume that by amending the sentencing, by the Sentencing Commission's act of amending the guidelines, by Congress approving those amendments, that we would take what is the quintessential federal controlled substance offense from any certain year back. So 2015 for isoflupine, and simply exempt those convictions from this entirely. And I don't believe that such a reading would be consistent with Groves. Apologize, I've lost track of where I am, but I'm regaining that track. Further, Your Honor, in terms of Terry, I mentioned the timing, a timing argument. Can you kind of expound upon that? What do you mean by that? Yes, Your Honor. So looking at the timing argument as arose in Brown, as my colleague noted, that did arrive in the ACCA context. And I believe that the Supreme Court there didn't state this is expressly limited to this context forever. It did note in, I believe, footnote 7, that there is a different timing provision as it relates to the guidelines, in the sense that, of course, we apply the guidelines that are in effect as of the day of sentencing. But I think at that point we have to go and look at the guidelines and see whether or not they speak prospectively or retroactively. And in this situation specifically, particularly considering that evolving flexibility that my colleague referenced, I don't believe that it would be consistent to interpret it in such a way that a conviction for distribution of cocaine base would not be covered because of the descheduling of a substance. This would require courts all across the country to conduct an evolving analysis routinely to keep track of descheduling, even in cases where that's simply not a matter that is before the court. Do you have an idea how often that happens? Not as often as it perhaps should happen in light of medical developments. But I think in terms of obviously the isoflupine, hemp, there's been more movement towards other substances. But off the top of my head, I cannot give you a number. Is there an argument that we need to look a little bit more broadly here and just say that Congress criminalized this particular conduct, whatever it was that the statute was passed, and that hasn't changed? Sort of the broad conduct of possessing a controlled substance, the elements remain the same? And I would agree with that. As the court identified, it is the gravamen of the offense, and that has not changed. The conduct-based elements have remained the same for, I believe, since the enactment of the Controlled Substances Act. And while the schedules have changed... Well before my time, Your Honor. Is that a jab at us? Absolutely not, Your Honor. Just a way to avoid admitting that I don't know the answer to that question. And Congress left it to who to say what was listed on the schedule? It was delegated to the Attorney General and then down to DEA and the FDA, I believe. Does that implicate this Loper-Bright ruling that the Supreme Court made a few months ago? Well, Your Honor, I would first note, as I believe I had to also observe on the record yesterday, that the parties haven't briefed the impact of Loper-Bright, but in addition to that, the parties never argued as to the applicability of Chevron in this case. And I don't believe there has been a determinative decision as to the hour line of cases that would come into play as to the guidelines. So my answer would be, I do not believe so. Congress decided what the crime was. And they left it to some people to decide what part of the element was. Yes, Your Honor. So in recognizing the evolving nature of controlled substances, so I'm sure everyone remembers the analog dispute that boiled hot for a little while and then tempered back down, there's always new drugs arising, and that's part of the reason why that kind of flexibility and the need for specialized areas, which I believe brings us back into deference questions, arises. But as I believe Chief Judge Diaz identified, the conduct-based elements have not changed. And looking at the different cases that are cited here regarding the drug type, which I think is kind of what we're sort of moving towards for the drug type analysis, all of the cases that are cited and which address divisibility by drug type and find that there is not a categorical match, those cases are all comparing substance to substance. So in Hope, we had a situation involving marijuana where it was still including hemp, but it would not be included under the federal schedule. Here we are comparing schedules one and two broadly to each other. And that is not something where there is support in the law for such a general broad approach, and it would effectively render this section subject to frequent change in such a way that it would be unpredictable how to apply it. And of course, as Judge Diaz, you recognized, descheduling, rescheduling doesn't happen that often, but it is a significant effect. Excuse me. And moving on to address Terry, the government submits that this did not provide a definitive answer. I think one attorney's dicta is another attorney's holding. We can go back and forth on what exactly the precedence of, the precedential effect of the sentence is. Obviously, any directive by the Supreme Court is binding, but we have to also look at the context. The Supreme Court did not say, we hold that B1C is indivisible. Rather, it was looking in the context of whether or not the penalties for an offense had changed under the First Step Act as it applied to B1C offenses. And in doing that analysis, they noted that there are effectively three crack cocaine offenses. The first is under B1A, the second is under B1B, and the third is under B1C. And the court laid out the elements for each, and in doing so, came to that kind of operative language that we dispute does not control and is not a definitive answer in this case, which is some unspecified amount of a Schedule I or II drug. The government's position is that this is not a statement that that is as a holding an element of every single B1C offense. I apologize, Your Honor, I think I have something in my throat. If you don't mind. That would really cap things off. But if we look more broadly at Terry, we can see, for example, in footnote 4, where the Supreme Court notes the elements, of course, an indictment that charged a person with five grams of crack now is no different from one charging a person with an unspecified amount of crack. The usual practice is to ignore the extraneous language in the indictment. It's not about the types, but about the quantity. And moving from this, I think the bottom line to take away is that Terry doesn't address whether and it certainly does not hold that 841B1C is indivisible. Rather, it holds that in the context of the First Step Act, the penalties did not change for a B1C offense. Now, looking at similarly structured state statutes, they are also divisible. So, for example, Dozier, the West Virginia distribution statute, is divisible by type. Baugh v. Gonzalez and Kukalon v. Gonzalez, which both dealt with the Virginia distribution statute, similar, same as that at issue here, was divisible by type. And Ward did not hold otherwise. Rather, it held that a categorical match, it was a categorical match to 841 and that they need not address the modified categorical approach. And as relevant in Ward, the court actually rejected the argument that because Virginia law broadly prohibited a broader set of substances, unlike the substance-to-substance approach in Hope, then federal law that the Virginia statute was categorically overbroad. Now, in the interest of making sure I cover everything, I'm going to try to speed up a little bit if there are no further questions on that particular area. Specifically, to kind of wrap this up, under either Campbell or Hope, Mr. Nelson's argument is simply unavailing. Section 841 is divisible by offense, it's divisible by drug type, and it's divisible by drug quantity. And we don't need to engage in myopic parsing to find that it's indivisible when there are so many different ways that it can be charged as to the elements. And because the statute is divisible, this court can, and the district court did, look at the Shepard documents and see that Mr. Nelson's prior conviction is a categorical match. And as I indicated earlier, many of the cases that are cited, again, they compare definitions of particular substances, not broad schedules. So, for example, in Hope, the court was comparing South Carolina marijuana versus federal marijuana. In Jackson, it was the Florida cocaine statute versus federal cocaine. Holiday, which was the Ninth Circuit, dealt with Montana cocaine versus federal cocaine. Perez dealt with Iowa cocaine to federal cocaine. It's over breadth by conduct and dealing with attempted transfers. Under both Section 841 and Virginia law, distributions are defined to include the completed offense of attempted transfers, distinct from attempted distribution. The question as to whether the least culpable conduct in this case as to each statute is a categorical match to the generic definition of a controlled substance offense has been answered by Groves. The completed offense of attempted transfer, distinct from an attempt, is legally distinct from an attempted distribution. And it's a very fun sentence to say with all of the levels of attempt, but essentially it comes down to an attempted transfer is a completed offense. It's actually not an attempt itself. The receiver-giver relationship is at the crux of that offense, as the government previously argued in Groves. Now briefly addressing the Section 994 argument, this argument was also raised before the court in Groves arguing that Congress's directive to the Sentencing Commission was not binding on future opposition. But there's no indication that there's been any change that in substituting words instead of the statutes, that Congress intended to give the Sentencing Commission authority or to approve the exclusion of those offenses. And to clarify, just so I'm clear on the record, the extent that the government does not dispute is that there has been linguistic change. We agree with that. We just disagree that it has some import to narrow the offense. I understood your colleague on the other side to be making an argument that because the penalties differ with respect to these exclusion offenses that that makes a difference. Did you catch that? I did, Your Honor, and I think I don't agree that it makes a distinction that would benefit Mr. Nelson, and that may perhaps be a misunderstanding on my part. I believe instead that those different penalties would in fact indicate it's not a question, it doesn't bear on superfluity, at all. Rather, it indicates that they are separate and distinct offenses and that an attempted transfer is in fact the least culpable conduct that's punished by the Virginia statute. And the fact that Virginia has opted to punish an attempt separately and in fact has a felony and a misdemeanor provision, I believe subsection A and B of that Virginia statute, punish attempt separately. I believe that lends further credence and I see my time is run. I'll go ahead and finish your answer. I believe that that further indicates that they are distinct offenses, that it's not penalizing the same conduct. An attempted transfer, as set forth in the definition of a delivery, is distinct from the crimes of attempt which are set forth in that Virginia statutory attempt section. All right. Thank you very much. Okay. Ms. Toma, you've got some rebuttal. Thank you, Your Honor. A couple points I'd like to make about the divisibility of B1C. My colleague points to other parts of the B1C clause that do I in fact identify some date rape drugs as being specifically singled out in B1C? And just to be very clear, we don't dispute that B1C may very well be divisible as to both gamma hydroxybutyric acid, GHB, or flunitrazepam. It probably is, although that's certainly a question that would maybe be better left for a case that actually involves those drugs and has that divisibility at issue. But that's a separate question from whether Schedule 1 or 2 controlled substance is divisible because those are different parts of the statute. And of course, even if you threw those all together, that doesn't change the fact that the clause controlled substance in Schedule 1 or 2 simply doesn't break down further. And I would add that even if it's divisible by date rape drugs, again, something we don't contest it may very well be, it's not divisible by crack cocaine. And I would also note that as we point out in our opening brief at page 10, the Solicitor General in Terry agrees with us and disagrees with my colleague's position here. That's cited at page 10, and of course, the court can see that for itself. Moving on, as the court also knows, dealing with descheduled substances, even if it does produce what might be a strange result in this case, we all know that that's a very easy fix. Now that the Sensing Commission has a quorum again and is actively amending and promulgating every single year, if they wish to, as they very often have to, resolve any sort of dispute about what the guidelines mean, it's as easy as promulgating next year. It can be that simple, and that's a job for the Sentencing Commission, and it always really has been their responsibility to do that. It's not quite so difficult if the result comes out that way. It's really not such a difficult thing to fix if it's not what the Commission intended. When you say fix, fix for this one case or fix more broadly, because as your colleague pointed out, schedules change all the time, so what would be the fix? I think the Sentencing Commission could simply add language, promulgate language into the text of the guidelines, simply saying that the descheduling of a substance doesn't change. They could take a position in the guidelines as to timing. It would be that simple, and it would cover it for anything moving forward. Indeed, the subset of offenders that a decision in our favor today would actually affect may be limited to Mr. Nelson. I'm not sure. Possibly single digits. I'm not sure if there are a great deal of folks who have anything pending that would be able to work its way through in time. In any event, I did also want to address the idea that I would imagine that we might see a few post-conviction You might, Your Honor. At the same time, I believe that those would not be cognizable in collateral review, so if I'm correct about that. Are you taking a position for the whole Federal Defender Committee? I am absolutely not, and please don't tell me. That would be litigated pretty extensively. My statements here today are non-binding on any future litigation. I'd like to walk it back, actually. I would, however, if the Court has no further questions on that point, I would also like to add that my colleague draws a distinction between the Hope decision and other decisions like it that are simply looking at a subset of hemp in a broader category of marijuana, and while I understand the point, simply I don't think there's any difference, and my colleague doesn't identify any that I'm aware of, that draws a legal distinction between hemp as a clearly defined subset of marijuana and crack cocaine as a clearly defined subset of Schedule I or II controlled substance. I'm simply just not of any legal line drawing that exists on that point. I think the analogy there is pretty apt. And finally, I would like to just add with respect to the Campbell issue that I do believe, just to clarify my further answer, my previous answer, excuse me, I do think that the different penalties are clear evidence of a legislative intent to create what would be some sort of distinct, I think it's not accidental in other words. I think it's not some accident that they were, that they accidentally left attempted distribution or attempted transfer in there together. I think the fact that those things have different penalties is clear evidence of the fact that those were intentional acts of the legislature and that even when they do cover the same conduct, those are just options the government can choose from. And finally, with my last ten seconds, I just want to also clarify that Ward decided only one question, which was controlled by whom, state or federal, where the predicate results from. It didn't do anything about when. And so we would ask that the court vacate Mr. Nelson's career offender enhancement and remand for resentencing. Thank you. Thank you, Ms. Tone. I want to thank both counsel for their fine arguments this morning. We'll come down and greet you and then move on to our second case.
judges: Albert Diaz, Robert B. King, Louise W. Flanagan